**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH HAZLEY, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 21 C 4268 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 1, 2021, petitioner Joseph Hazley, by counsel, filed an amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  For the reasons stated below, the Court denies Hazley's § 2255 motion and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

**Background**

On March 6, 2019, a jury convicted Hazley of six sex-trafficking counts related to his recruitment of two young women and a minor girl into prostitution.  *See* 18 U.S.C. §§ 1591(a)–(c), 1594(c), 2421(a).  The jury, however, acquitted Hazley on one count of sex-trafficking arising from the November 2016 transportation of two victims from Ohio to Illinois due in large part to defense counsel's cross-examination of one of the victims.  The Court sentenced Hazley to a within-guidelines sentence of 384 months in prison followed by 7 years of supervised release.  Hazley appealed his conviction and sentence, after which his appointed appellate counsel filed a motion to withdraw asserting that any appeal was frivolous pursuant to *Anders v. California*, 386 U.S. 738, 744,

---

[1]  Petitioner originally filed his motion as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1), which pertains to state court prisoners.  On October 4, 2021, the Honorable Gary Feinerman directed the Clerk of the Court to reassign this matter to the Executive Committee, which in turn assigned the present § 2255 motion to this Court, who oversaw petitioner's criminal proceedings, *United States v. Hazley*, 17-cr-430-1.

87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Hazley did not respond to counsel's *Anders* motion under Seventh Circuit Rule 51(b). On May 12, 2020, the Seventh Circuit granted appellate counsel's *Anders* motion and dismissed Hazley's appeal.

The charges in the superseding indictment arose after Hazley recruited two 18-year-old women and a 16-year-old girl into prostitution, advertised them for commercial sex on Backpage.com, escorted them to commercial sex appointments, and transported one of them from Illinois to Indiana several times for commercial sex. The government presented overwhelming evidence of Hazley's guilt of the six sex-trafficking counts, including eyewitness testimony, numerous text messages, Facebook messaging between Hazley and his victims, and forensic evidence gleaned from Hazley's computer. Two of Hazley's victims testified at trial pursuant to grants of immunity. Other trial witnesses included Hazley's co-defendant, FBI agents, a Markham, Illinois police officer, Hazley's friend Raphael McClinton, and an expert in the dynamics of commercial sex exploitation, among other witnesses.

Turning to the trial evidence, Hazley's victim "Shiane" testified that Hazley was her pimp and that she began working for him in April 2016. She believed that she was in a relationship with Hazley, who treated her like she was his girlfriend. She had moved into Hazley's house and took care of his children. After she moved in with Hazley, Hazley told her that money was tight and that she needed to work as an escort. She observed Hazley posting ads on Backpage offering her for commercial sex acts. After Hazley posted the ads, commercial sex customers called Shiane's phone and she would set up appointments. Hazley would then drive her to locations in Illinois and Indiana, where he sat outside and waited for her. According to Shiane, Hazley took her on 10 or more prostitution "dates" a day. Shiane also testified that Hazley did not allow her to leave his house and at one point controlled her money.

In November 2016, Shiane's friend "Gina" called her and asked Shiane to pick her up in Youngstown, Ohio. Shiane and Hazley then drove to Youngstown and returned to Chicago with Gina. Once back in Chicago, both Shiane and Gina worked for Hazley as prostitutes. Hazley posted Backpage advertising Shiane and Gina for commercial sex.

After Gina moved out of Hazley's house, 16-year-old "Desiree" moved in. Shiane and Desiree lived together at Hazley's house in early December 2016, at which time Hazley facilitated Desiree's commercial sex acts, including advertising her services on Backpage. Hazley instructed Shiane to teach Desiree how to answer the phone and talk to commercial sex customers. Shiane observed Hazley take Desiree on five to six "dates" each day. Shiane eventually left Hazley's house because she was jealous of Desiree. In addition, Hazley's co-defendant, Charles McFee, testified about Hazley's involvement with Desiree after McFee had recruited her for Hazley.

On December 24, 2016, Desiree was murdered in Markham, Illinois, while Hazley was in a car outside of the property waiting for her. Cristina Rosales, who lived at the property where Desiree's body was found, testified Hazley knocked on her door looking for Desiree, after which Rosales' husband opened the garage and they discovered Desiree's body. Cristina Rosales stated Hazley then repeatedly said she was only 18-years-old. Rosales called 911 and told Hazley that the police did not want him to leave the scene. On cross-examination of Rosales, defense counsel established that Hazley had not left the scene. Hazley was not charged with Desiree's murder, instead, Cristina Rosales' husband, Antonio Rosales, was. Meanwhile, after Desiree died, Hazley contacted Shiane to come back to work telling her that money was getting tight. She did not return.

In June 2017, the FBI executed a search warrant of Hazley's house and recovered a computer. A forensic review of the computer revealed links to Backpage and ads featuring Desiree. The FBI also conducted a forensic analysis of Desiree's phone. The analysis showed text messages

between Desiree and Backpage customers, along with a photo of Desiree that she had sent to

Hazley. Hazley was arrested on June 21, 2017, and proceeded to trial in February 2019.

**Legal Standard**

"Section 2255 provides relief for a federal prisoner if their sentence 'was imposed in

violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to

impose such sentence, or [if] the sentence was in excess of the maximum authorized by law.'" *Harris

v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (quoting 28 U.S.C. § 2255(a)). "Relief under [§

2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional

magnitude or where a fundamental defect has occurred which results in a complete miscarriage of

justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). Because Sixth Amendment

ineffective assistance of counsel claims often involve evidence outside of the trial record, such

claims may be brought for the first time in a § 2255 motion. *United States v. Cates*, 950 F.3d 453, 457

(7th Cir. 2020). Otherwise, a "claim not raised on direct appeal generally may not be raised for the

first time on collateral review and amounts to procedural default." *White v. United States*, 8 F.4th 547,

554 (7th Cir. 2021). To overcome procedural default, a petitioner must show either cause for

the default and actual prejudice, or that there has been a fundamental miscarriage of justice, namely,

that he is actually innocent. *See id.*; *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019).

**Discussion**

*Sixth Amendment Right to Effective Assistance of Trial Counsel*

Hazley makes several arguments why his trial counsel provided constitutionally ineffective

assistance of counsel that the Court addresses in turn. To establish ineffective assistance of counsel

in violation of the Sixth Amendment, Hazley must establish: (1) his trial attorney's performance "fell

below an objective standard of reasonableness," informed by "prevailing professional norms" and

(2) "but for counsel's unprofessional errors the result of the proceeding would have been different."

4

*Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the

*Strickland* performance prong, there is a strong presumption "that counsel's conduct falls within the

wide range of reasonable professional assistance." *Lumpkin v. Hermans*, 33 F.4th 403, 409 (7th Cir.

2022) (citation omitted). Under the *Strickland* prejudice prong, it is not enough "to show that the

errors had some conceivable effect on the outcome of the proceeding," rather, Hazley must

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 693, 695. If Hazley fails to make a proper showing

under one of the *Strickland* prongs, the Court need not consider the other. *Id.* at 697.

Hazley first argues he "was denied the right to a fair trial in violation of the sixth and fourth

amendments when trial counsel entirely failed to subject the prosecution's case to adversarial

testing." Instead of discussing *Strickland*, Hazley argues this case falls under *United States v. Cronic*,

466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "*Cronic* recognized a narrow exception

to *Strickland's* holding" by instructing "that a presumption of prejudice would be in order in

'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a

particular case is unjustified.'" *Florida v. Nixon*, 543 U.S. 175, 190 125 S.Ct. 551, 562, 160 LEd.2d

565 (2004) (citation omitted). Under *Cronic*, prejudice may be presumed if: (1) the accused is denied

the presence of counsel at a critical stage in proceedings; (2) counsel entirely fails to subject the

prosecution's case to meaningful adversarial testing; or (3) counsel is called upon to render assistance

under circumstances where competent counsel very likely could not. *Lewis v. Zatecky*, 993 F.3d 994,

1101 (7th Cir. 2021). In discussing *Cronic*, the Seventh Circuit has stated "[a]lthough such a total

breakdown is rare, the Court has never wavered from the recognition that it can occur." *Id.* at 997.

Hazley has failed to establish *Cronic's* narrow exception to *Strickland* because, assessing

counsel's advocacy as a whole, defense counsel subjected the prosecution's case to meaningful

adversarial testing throughout every critical stage of this case. Prior to trial, counsel filed numerous

motions in limine to bar the introduction of damaging evidence, and the Court granted the majority

of these in limine motions. Counsel rigorously cross-examined the prosecution's witnesses,

including Shiane who admitted she lied to investigating federal agents and that she only provided

important information to investigators after she was granted immunity. On cross-examination,

Shiane also admitted she could have left Hazley's house during times when he was not present or to

go to the store. Defense counsel also cross-examined Gina, who admitted she voluntarily visited

Shiane in Chicago and that she was not held against her will while in Chicago. When cross-

examining McFee, trial counsel established McFee believed Desiree was 18-years-old and that

McFee initially failed to tell investigators that Hazley was prostituting young women.

At closing, defense counsel explained that certain witnesses were given immunity and a plea

deal to give testimony and pointed out deficiencies in the expert's opinion testimony. Counsel

further remarked as to the lack of customer testimony, pointed out inconsistent testimony, and

repeated that Hazley was unaware that Desiree was a minor. Counsel also discussed the

presumption of innocence and the hefty burden of proof beyond a reasonable doubt. At the end of

closing, trial counsel went through the indictment count-by-count explaining why the government's

proof had failed on each count.

After the jury returned its verdict, counsel filed a detailed motion for judgment of acquittal.

Prior to sentencing, trial counsel provided a comprehensive sentencing memorandum on behalf of

Hazley discussing his tumultuous childhood, including his father's wrongful conviction and 21 years

of incarceration. Defense counsel further discussed Hazley's minimal criminal background,

addressed certain sentencing considerations under the 18 U.S.C. § 3553 factors, and challenged the

probation office's sentencing recommendation. Based on these factors, defense counsel argued the

mandatory minimum of ten years in prison was appropriate. Attached to Hazley's sentencing

memorandum were eleven letters in support of Hazley. Counsel also made several objections to the

probation office's Pre-Sentence Investigation Report, including the recommended sentencing enhancements. In the end, the government agreed that the leader/organizer enhancement under U.S.S.G. § 3B1.1(c) did not apply. At sentencing, the Court rejected the prosecution's argument that obstruction enhancement under U.S.S.G. § 3C1.1 applied.

Rather than addressing this meaningful advocacy, in support of his *Cronic* argument, Hazley points to alleged errors in isolation, although *Strickland* holds "it is the full course of representation that matters." *Coleman v. Neal*, 990 F.3d 1054, 1056 (7th Cir. 2021). Hazley, for example, argues his trial counsel's advocacy was unreasonable because counsel met with him at the Kendall County Jail to solicit his business. Hazley asserts this meeting violated Model Rule of Professional Conduct 7.3 and Illinois Supreme Court Rule 7.3, which prohibit lawyers from soliciting potential clients with live person-to-person contact when a significant motive for the lawyer doing so is pecuniary gain. Assuming Hazley has fulfilled the *Strickland* performance prong, because *Cronic* does not apply, Hazley must explain how this conduct prejudiced him. Put differently, Hazley must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693. Hazley has not done so.

Furthermore, Hazley maintains his lead defense attorney was incompetent by pointing to comments made on the Facebook page of counsel's law firm and co-counsel's LinkedIn page where she stated lead counsel had suffered strokes and did not pay her. In her comments on LinkedIn, co-counsel did not indicate when lead counsel allegedly suffered these strokes. These vague social media posts from April and June 2020—a year after the jury returned the verdict—add little to the Court's analysis of trial counsel's performance from September 2017 through sentencing in June 2019. To clarify, Hazley has failed to offer any evidence that counsel was suffering from or had strokes during or prior to his representation of Hazley, and the Court is unwilling to make any such

7

inference based on these social media posts. *See United States v. Ballentine*, No. 17 C 2271, 2017 WL

3704847, at *3 (N.D. Ill. Aug. 28, 2017) (Kennelly, J).

Hazley further argues defense counsel "abdicated" his duty to investigate evidence that

would have impeached the government's witnesses and shown his innocence. In attacking

his trial counsel's performance, Hazley must "overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at

689, including that any such additional evidence might be cumulative. *See Smith v. Lane*, 794 F.2d

287, 292 (7th Cir. 1986). In support of his argument, Hazley provides the Court with the

declarations of potential witnesses, who counsel did not call at trial. However, the "Constitution

does not oblige counsel to present each and every witness that is suggested to him." *United States v.*

*Berg*, 714 F.3d 490, 499 (7th Cir. 2013) (citation omitted).

Turning to the potential witnesses, one witness, Gabriella Williams, averred Shiane was able

to move out of Hazley's house any time she wanted. Attached to his reply brief, Hazley presents the

declaration of his sister who makes the same statement. This potential testimony duplicates Shiane's

testimony on cross-examination that she could move out of Hazley's house when he was not

around. These affiants also state that Shiane and Hazley had a regular relationship, which confirms

Shiane's testimony that she thought she was in a relationship with Hazley. Another declaration by

Hazley's friend Ajene Dunbar avers Desiree looked like she was in her 20s, not 16-years-old. This

potential testimony is cumulative to McFee's testimony on cross-examination that he thought

Desiree was 18-years-old. In fact, at closing, defense counsel focused on the fact that Hazley did

not know Desiree was a minor.

Another declaration Hazley presents discusses potential security camera footage. Hazley

surmises that this footage "may have captured who was driving Hazley's car on the evening of

December 24, 2016," which was the day Desiree was murdered. Without more, this vague

8

declaration adds little to the calculus of whether trial counsel properly investigated this case. Likewise, in his undated declaration, Hazley's father said he would testify at trial and his son's sentencing, but counsel chose not to call him. It is well-settled that counsel, as a matter of reasonable trial strategy, is not required to call family members as witnesses. *See Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) ("As a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias."). Meanwhile, at sentencing, defense counsel provided letters in mitigation, including letters from both Hazley's father and mother.

Similarly, Hazley takes issue with defense counsel's investigation and then cross-examination of Desiree's friend, Tobijah Burks, because counsel only asked Burks a few questions at trial. To give context, Burks testimony was limited. He testified that in the fall of 2016 he communicated with Desiree and she told him she was in a bad situation. Desiree told him she was being pimped and her pimp would not allow her to leave the house. Burks testified he tried to help Desiree, but never saw her again. On cross-examination, defense counsel questioned Burks about how smart and strong Desiree was, to which Burks agreed. Counsel also asked questions concerning Burks' understanding of the word "pimped." Defense counsel asking only a few questions on cross-examination does not show that counsel's performance was objectively unreasonable, especially because Hazley does not explain what questions counsel should have asked.

In addition, Hazley contends defense counsel failed to investigate his case in the context of Cristina Rosales' trial testimony. Rosales testified that she talked to defense counsel on the phone before trial, and at that time, he asked her what happened on the evening Desiree was murdered. She testified that he listened to her for five minutes, and then after she described what happened, he ended the call. Hazley argues counsel's five minute phone call shows he did not properly investigate this case, yet counsel's cross-examination of Rosales was significant because it established Hazley did

9

not leave the scene of Desiree's murder and waited for the police to arrive. Under these circumstances, counsel's cross-examination of Rosales was not objectively unreasonable.

Assuming defense counsel's performance in investigating this case was outside the wide range of reasonable professional assistance, Hazley has not established how counsel's alleged failure to investigate prejudiced him based on the overwhelming evidence of Hazley's guilt presented at trial. *See Strickland*, 466 U.S. at 696 ("verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *see, e.g., Shannon v. United States*, ___ F.4th ___, 2022 WL 2681410, at *5 (7th Cir. July 12, 2022).

Next, Hazley argues his Sixth Amendment rights were violated when his trial counsel failed to sufficiently challenge the government's expert witness Sharon Cooper, a developmental and forensic pediatrician. To start, defense counsel filed a motion in limine to bar the government's expert witness. In that motion, defense counsel specifically argued that a sex trafficking expert was irrelevant based on the environment, context, and relationship dynamics that existed in this case. Defense counsel also argued any such expert testimony would be far more prejudicial than probative. The Court denied defense counsel's motion.

At trial, Dr. Cooper testified about sex-trafficking terminology, methods sex traffickers use to target, recruit, and control victims, factors that make young adults and minors susceptible to the influence of sex traffickers, and reasons victims do not leave sex traffickers. *See United States v. Young*, 955 F.3d 608, 615 (7th Cir. 2020) ("expert testimony, which define[s] key terms and explain[s] common sex-trafficking dynamics, [is] helpful for the jury."). On cross-examination, Dr. Cooper testified that she did not know the specific details of this case, had not talked to Hazley or his victims, and did not review any of the evidence.

Hazley further contends defense counsel's positive statements about Dr. Cooper amounted to ineffective assistance of counsel. For example, at closing, defense counsel discussed Dr. Cooper's

credentials stating that she was a great expert, but that her credentials, alone, did not establish that

Hazley was guilty.  During closing, defense counsel continued to poke holes in Dr. Cooper's opinion

testimony arguing it did not make sense in the context of the facts of this case.  He repeatedly

reminded the jury that Dr. Cooper did not know the facts of this case, and explained to the jury that

on cross-examination, Dr. Cooper admitted to anomalies and exceptions to her opinions.  Fronting

Dr. Cooper's credentials before questioning her opinions is an often-used trial strategy and was not

objectively unreasonable.

Moreover, Hazley cites another case where the district court, in its discretion, granted a

motion in limine to bar Dr. Cooper's expert testimony.  *See United States v. D'Ambrosio*, No. 1:15-CR-

003, 2016 WL 1385281, at *2 (M.D. Pa. Apr. 7, 2016).  When district courts exercise their discretion,

"it is possible for two judges, confronted with the identical record, to come to opposite conclusions

and for the appellate court to affirm both" because that "possibility is implicit in the concept of a

discretionary judgment." *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008).  Hazley's reliance

on *United States v. Delgado*, 677 F. App'x 84 (3d Cir. 2017), fares no better because it is factually

distinguishable from this case.  *See United States v. Delaney*, No. 18-1919, 2022 WL 356731, at *2 (7th

Cir. Feb. 7, 2022).  In the end, *Delaney* and *D'Ambrosio* are not persuasive.

Hazley also contends defense counsel charged his family $150,000 claiming that some of the

funds were needed to hire an expert, yet defense counsel never retained an expert.  In support of

this argument, Hazley provides his father's undated declaration, which lacks supporting

documentation.  This declaration avers that Hazley's father was also supposed to pay $50,000 at trial,

but that it was not paid.  In addition, the declaration fails to give any details about the expert's

potential testimony.  Meanwhile, to establish defense counsel's failure to call a rebuttal witnesses

amounted to ineffective assistance, Hazley must identify an expert who was capable of supporting

his defense at the time of his trial, which he has failed to do.  *See Resnick*, 7 F.4th at 621.  Equally

11

important, defense counsel's cross-examination of Dr. Cooper highlighted many points that a rebuttal expert would have made. *Id.*; *see also Harrington v. Richter*, 562 U.S. 86, 111, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."). As to the *Strickland* prejudice prong, the government presented overwhelming evidence of Hazley's guilt, and "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington,* 562 U.S. at 111. Therefore, Hazley's arguments in relation to Dr. Cooper are without merit.

*Sixth Amendment Effective Assistance of Appellate Counsel*

In his § 2255 motion, Hazley also asserts his appellate counsel was constitutionally ineffective because he failed to appeal Hazley's Sixth Amendment unbiased and impartial jury claim. Hazley, however, cannot establish he was prejudiced by appellate counsel's failure to bring this claim because after his appellate counsel filed his *Anders* brief, Hazley had the opportunity to bring this claim pursuant to Seventh Circuit Rule 51(b), but failed to do so. *See Jones v. United States*, No. 09 C 1148, 2009 WL 2601360, at *8 (N.D. Ill. Aug. 24. 2009) (St. Eve, J.). As such, Hazley's argument about appellate counsel's performance is misplaced.

*Sixth Amendment Unbiased and Impartial Jury Claim*

Next, Hazley contends trial counsel was ineffective in his representation concerning an impartial juror. As discussed directly above, Hazley's underlying impartial jury claim was procedurally defaulted because Hazley did not raise it on appeal. *See White,* 8 F.4th at 554. The Court also notes that even if this claim had not been procedurally defaulted, Hazley's Sixth Amendment unbiased and impartial jury argument is without merit because the particular juror was excused prior to the start of the jury's deliberations and Hazley has not attempted to explain how the juror's contacts may have tainted the remainder of the jurors. *See United States v. Lott*, 442 F.3d 981, 984 (7th Cir. 2006).

Examining the merits of Hazley's argument in the context of his ineffective assistance claim, after jury selection, but before the Court swore in the jury, the Court was informed that a juror had contact with a former federal prosecutor, at which time the juror told him she had been selected for jury service in the federal courthouse. In addition, there was a possibility that the same juror may have been a coach for the former prosecutor's son. Hazley's counsel then requested the Court to conduct a voir dire of this juror due to potential bias. The Court held the hearing on the record in chambers, at which time the juror informed the Court that her acquaintance was actually an immigration judge and that she did not tell the Court about him during jury selection because she did not consider him a close friend. The Court admonished the juror that she could not talk to anyone about her jury duty and the juror apologized stating she only mentioned that she was serving on a jury to the immigration judge. The juror also told the Court that she did not coach the immigration judge's son. The juror assured the Court that based on this connection, she was not biased toward one side or another and that she could keep an open mind. The Court then denied Hazley's motion to strike the juror for cause because the juror's contact with the immigration judge was inadvertent and incidental.

Hazley bases his ineffective assistance claim on defense counsel's failure to request a hearing under *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). The *Remmer* Court held "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.'" *Id.* at 229. The presumption of prejudice "may be rebutted if the government demonstrates that the contact was harmless," and "in cases of such tampering, the trial court should conduct a hearing to determine the circumstances, the impact upon the juror, and whether or not it was prejudicial."

*United States v. Martin*, 692 F.3d 760, 764 (7th Cir. 2012). That is exactly what the Court did here when conducting a hearing outside of the presence of the other jurors, hearing the parties' arguments, and concluding that the juror's contact was harmless.

Another incident occurred with this same juror before the jury began deliberations, namely, the juror had contact with an assistant United States Attorney when they crossed paths in the lobby of the courthouse and the juror said hello. After defense counsel made several compelling arguments about this contact, the Court excused the juror from deliberations and replaced her with an alternate juror. In the end, defense counsel's advocacy on this issue resulted in Hazley's favor, therefore, counsel's performance was not objectively unreasonable.

Further, Hazley argues the cumulative effect of defense counsel's numerous errors violated his Sixth Amendment right to effective assistance of counsel. Because the Court has not detected any unreasonable and prejudicial errors, the Court cannot conclude there was any cumulative effect amounting to ineffective assistance. *See Resnick v. United States*, 7 F.4th 611, 625 (7th Cir. 2021). In sum, Hazley "has failed to identify errors that could combine to overcome the Government's strong case against him." *Id.* Likewise, Hazley's argument that these cumulative errors denied him a fair trial under the due process clause is also unavailing, especially because Hazley does not attempt to explain how these errors so infected the jury's deliberation that he was denied a fundamentally fair trial. *See United States v. Edwards*, 34 F.4th 570, 588 (7th Cir. 2022).

*Fourth Amendment*

In his legal memoranda, Hazley invokes the Fourth Amendment in support of his claims. A "violation of the Fourth Amendment cannot be a ground for habeas corpus (or for its equivalent for federal prisoners, [] the grant of a section 2255 motion) unless the defendant could not have presented a Fourth Amendment defense at trial." *Owens v. United States*, 387 F.3d 607, 609 (7th Cir.

14

2004).  Hazley has not addressed this issue.  Indeed, it appears Hazley's reliance on the Fourth

Amendment was a mistake.

*Evidentiary Hearing*

Hazley seeks an evidentiary hearing to support his § 2255 claims.  "Not every petitioner who

seeks relief pursuant to § 2255 is entitled to an evidentiary hearing."  *Boulb v. United States,* 818 F.3d

334, 339 (7th Cir. 2016).  District courts have discretion to deny a § 2255 petitioner an evidentiary

hearing if "the motion and the files and records of the case conclusively show that the prisoner is

entitled to no relief," 28 U.S.C. § 2255(b), or "if the petitioner makes conclusory or speculative

allegations rather than specific factual allegations."  *Burkhart v. United States*, 27 F.4th 1289, 1299 (7th

Cir. 2022) (citations omitted); *see also United States v. Coscia,* 4 F.4th 454, 482 (7th Cir. 2021).  After

presiding over this criminal matter and thoroughly reviewing the trial record, the Court, in its

discretion, concludes an evidentiary hearing is unwarranted because "the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief."  This is especially

true due to the overwhelming evidence of Hazley's guilt and keeping in mind that relief under §

2255 "is available only in extraordinary situations."  *Blake* 723 F.3d at 878-79.

Nevertheless, Hazley argues he is entitled to an evidentiary hearing to determine whether he

received ineffective assistance of trial counsel.  The majority of Hazley's arguments in support of his

request for an evidentiary hearing are made for the first time in his reply brief, and arguments made

for the first time in reply are waived.  *See Zylstra v. DRV, LLC,* 8 F.4th 597, 609 (7th Cir. 2021).

With this in mind, Hazley's speculative arguments, such as his counsel's health issues or what might

be on the video camera footage, do not support a motion for an evidentiary hearing.  Further,

Hazley's reliance on the declarations of witnesses counsel did not call at trial, as discussed above,

fares no better because this testimony was minimally impeaching, and certainly not exculpatory.

Also, it was sound trial strategy for counsel not to call Hazley's relatives as witnesses.  Equally

15

unavailing is Hazley's argument that an evidentiary hearing is necessary to determine whether counsel actually made proper strategic decisions. This argument is not persuasive in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and because Hazley has not established that defense counsel's conduct prejudiced him. Hazley has not met his burden in establishing that an evidentiary hearing is warranted.

**Certificate of Appealability**

Under § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Hazley is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right, which requires him to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 336 (citation omitted).

Hazley has not submitted any arguments that a certificate of appealability should issue and the Court concludes that based on the record, Hazley has failed to establish that reasonable jurors would debate that this § 2255 should be resolved differently. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [8] and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

SO ORDERED

DATED: 7/20/2022

Sharon Johnson Coleman
United States District Judge

16